# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IRIS N. PADUA, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL ACTION NO.: |
| | : | |
| CAROLYN W. COLVIN,[1] | : | |
| ACTING COMMISSIONER OF | : | 2:12-CV-270-CDJ |
| THE SOCIAL SECURITY | : | |
| ADMINISTRATION, | : | |
| | : | |
| Defendant | : | |

## ORDER

**AND NOW**, this 12th day of September, 2014, it is hereby **ORDERED** that Plaintiff's Objections, (Doc. No. 20), are **OVERRULED**,[2] and the Report and Recommendation of the

---

[1] On February 14, 2013, Carolyn W. Colvin became the acting commissioner of the Social Security Administration, so she will be substituted for Michael J. Astrue, former Commissioner of the Social Security Administration, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Plaintiff first objects to the Report and Recommendation on the ground that the ALJ failed to apply the standard of mental retardation adopted by one of the major mental health organizations in the United States. A cursory reading of the portion of the Federal Register cited by plaintiff, however, demonstrates that the applicable regulations do not require the ALJ to do so:

> The definition of MR we use in our listings *is consistent with, if not identical to*, the definitions of MR used by the leading professional organizations. The four major professional organizations in the United States that deal with MR have each established their own definition of MR. While all the definitions require significant deficits in intellectual functioning, as evidenced by IQ scores of approximately 70 or below, age of onset and the method of measuring the required deficits in adaptive functioning differ among the organizations. . . .
>
> The definition of MR used by SSA in the listings is not restricted to diagnostic uses alone, *nor does it seek to endorse the methodology of one professional organization over another. While capturing the essence of the definitions used by the professional organizations, it also is used to determine eligibility for disability benefits*. SSA's definition establishes the necessary elements, while *allowing* use of any of the measurement methods recognized and endorsed by

the professional organizations.

*Technical Revisions to Medical Criteria for Determination of Disability*, 67 FR 20018-01 (Notice and Comment Section) (emphasis added).

Therefore, the ALJ did not commit error by failing to consider the definition of mental retardation adopted by the major mental health organizations. Moreover, the above-quoted language is drawn from the Notice and Comment section of the Federal Register, and a review of the complete comment further belies plaintiff's argument. When read as a whole, it is readily apparent that the administration declined the invitation to adopt the American Psychiatric Association's definition of mental retardation:

> Comment: One commenter recommended that we use the definition of mental retardation (MR) found in the Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV), published by the American Psychiatric Association, as the definition of MR in listing 12.05 and 112.05.
>
> Response: *We did not adopt the comment.* The definition of MR we use in our listings is consistent with, if not identical to, the definitions of MR used by the leading professional organizations. The four major professional organizations in the United States that deal with MR have each established their own definition of MR. While all the definitions require significant deficits in intellectual functioning, as evidenced by IQ scores of approximately 70 or below, age of onset and the method of measuring the required deficits in adaptive functioning differ among the organizations.

*Id.* (emphasis added).

The comment and response indicates that the Administration declined to adopt the definition of mental retardation of one of the major mental health organizations. Furthermore, the comment explains that the purpose of the definition of mental retardation in the social security context is different than it is in the mental health context because the SSA's definition is used to "determine eligibility for disability benefits" while professional health organizations' definitions are for diagnosis and treatment purposes. *Id.*

Plaintiff next objects to the Report and Recommendation on the ground that ALJ's decision was not supported by substantial evidence. (Obj. at 10-11.) In particular, she notes that the ALJ's finding that plaintiff did not suffer from deficits in adaptive functioning is "undermined by her finding that Plaintiff suffers from moderate limitations as to maintaining social functioning and concentration, persistence, or pace, and by her limiting Plaintiff to simple routine tasks with short, simple instructions, no writing reports, no interaction with the public, and no teamwork." (Id. at 11.)

In reviewing the decision of an ALJ, the court's job is to determine whether it is supported by substantial evidence. *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). "Substantial evidence has been defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Id.* Here, plaintiff is essentially asking this court to substitute its own

2

Honorable Linda K. Caracappa, (Doc. No. 19), is **ADOPTED IN ITS ENTIRETY**. It is further

**ORDERED** that Plaintiff's Request for Review under 42 U.S.C. §405(g), (Doc. No. 3), is **DENIED**.

The Clerk of Court is **DIRECTED** to **CLOSE THE CASE** for statistical purposes.

BY THE COURT:

C. DARNELL JONES, II  J.

**ENTERED**

SEP 15 2014

**CLERK OF COURT**

---

decision for that of the ALJ, something the court is expressly prohibited from doing. The ALJ in this case found moderate difficulties in social functioning; mild restrictions in daily living; and moderate difficulties with regard to concentration, persistence or pace. On the other hand, she found that plaintiff could "attend school, maintain personal hygiene, perform chores, and prepare meals." The ALJ further noted:

> [Claimaint] noted a few limitations in activities of daily living, but even so, the undersigned finds at most a mild limitation based on the evidence of record as discussed below. The claimant noted that she spends time with others, talks to friends on the phone and went to school, but stated that she does not like going out and she argues a lot. Lastly, she noted difficulties with her memory, concentration and understanding, but she writes poems and letters about the way she feels and noted no limitations in completing tasks and following instructions.

(ALJ Dec. at 5.)

The ALJ's decision appears to be supported by substantial evidence, so this court will not disturb it at this stage. Plaintiff's request for review will be **DENIED**.

3